ACKERMAN v. BRAMWELL INV. CO. et al.

No. 5165. Decided July 5, 1932. (12 P. [2d] 623.)

*P. E. Norseth* and *J. E. Evans,* both of Ogden, for appellants.

*Geo. H. Lowe* and *W. H. Reeder, Jr.,* both of Ogden, for respondent.

STRAUP, J.

This action was brought by Dolly Ackerman, the plaintiff, against the Bramwell Investment Company and W. P. White et ux., defendants, to recover $341 and interest as damages alleged to have been sustained by the plaintiff on the ground of fraud and misrepresentation practiced by the investment company in the sale of a negotiable promissory note executed by the Whites to the investment company and by it sold to the plaintiff. The case was tried to the court, who on findings rendered judgment against the investment company in the sum of $398.32, including interest, from which judgment the investment company has prosecuted

this appeal. It complains on the ground that the complaint does not state facts sufficient to constitute a cause of action, that the findings are not supported by the evidence, and that the conclusions of law and the judgment are not justified by the findings and are against law.

The material facts alleged by the plaintiff and testified to by her and found by the court, in substance, are that the investment company at Ogden was engaged in building houses on a tract of land owned by it and selling them on contracts on the installment plan. By the contract the company reserved the right to mortgage the premises in an amount not to exceed $3,000 providing the unpaid principal was in excess of the amount of the loan, and, when the principal was reduced to that amount, the company agreed to convey the premises to the purchaser who assumed and agreed to pay the mortgage. In December, 1926, the Whites executed such a contract with the investment company to purchase a house and lot for the sum of $5,000, making, as recited in the contract, a first payment of $500, the receipt of which by the contract was acknowledged by the investment company. A similar contract was made by the company with a Mr. Tanner for a house and lot as a part of the same tract of land. As provided by the contracts, the investment company obtained a loan of $2,500 on each house and lot, and to secure the payment of the loans executed a mortgage on each house and lot, which the Whites and Tanner, respectively, assumed and agreed to pay. The contracts were put in escrow with a bank at Ogden. In February, 1927, such contracts were sold by the investment company to the plaintiff, who purchased them at a discount of 20 per cent. We are concerned only with the White contract. There was then unpaid on that contract, including interest, a balance of about $4,452. Deducting the amount of the mortgage therefrom left about $1,952 due on the contract. She paid approximately $2,800 for both contracts subject to the mortgages of $2,500 each which she assumed. After the purchase she left the contracts with the bank, where the

payments on them were to be made by the Whites and Tanner.

On December 29, 1928, about a year and ten months after she had purchased the contracts, the investment company sold and delivered a negotiable promissory note dated April 1, 1928, of the face value of $473, executed by the Whites and payable to the order of the investment company. The note was payable in monthly installments of $10 each. Eight monthly payments of $10 each were indorsed on the note as having been paid, the first on May 4, 1928, and the last December 5, 1928. When the plaintiff purchased the note, there was a balance unpaid thereon including unpaid interest amounting to $416.31. She purchased the note also at a discount of 20 per cent, paying therefor $341. Later an error in computation of interest was discovered in favor of the plaintiff, amounting to $7.52, which was tendered back to her by the investment company. The note was not indorsed by the investment company. But, at the time the note was purchased, delivered, and transferred to the plaintiff, the investment company gave her a separate writing or instrument, not attached to the note, as follows:

"Ogden, Utah, December 29, 1928.

"Mrs. Dolly Ackerman, Ogden, Utah

"Dear Madam: For satisfactory consideration we, hereby sell and assign to you all of our interest in the note of Mr. & Mrs. W. P. White and agree that this note will be made part of your building contract, if you so decide at any time that you designate.

"Very truly yours,

"The Bramwell Investment Co.,

"By W. L. Bramwell, Pres."

Not anything was paid on the note after the plaintiff purchased it. White went into bankruptcy in June, 1929, a little more than six months after the plaintiff purchased the note. In January, 1930, White surrendered his contract and all rights he had therein to the plaintiff. She thereupon withdrew the contract from the bank, took pos-

session of the premises and ever since has been in possession. She testified she did not know of White's delinquency until in January, 1930, when he surrendered the contract. She brought this action in May, 1930. It is not made to appear what effort was made by her to collect the note from the Whites or either of them, or that any demand of payment was made on them, nor is it alleged that she made any demand on the investment company of payment of the note. Counsel for plaintiff in their brief say "We are not suing on the note but are suing the defendant (investment company) for damages for fraudulently selling the note to the plaintiff."

With respect to the alleged fraud and misrepresentations, the plaintiff alleged and testified and the court found that, when she purchased the White contract in February, 1927, the defendant represented that the first payment made thereon by White, the receipt of which by the contract was acknowledged, was paid in cash, which statement was false and was made by the investment company to cheat and defraud the plaintiff; that the only cash paid on the principal of the contract was $48 and $52 interest, and, while it is not expressly alleged nor testified to, nor found by the court, yet the inference is deduced that the balance of the $500 first payment was paid by a note of the Whites to the investment company. But it is not alleged nor testified to nor found that the Whites were not, or that the plaintiff was not, given full and complete credit on the contract for the amount of $500 as and for the first payment and as the contract itself recited. Such amount as such first payment, when the plaintiff purchased the contract, was deducted from the contract price of the contract. Thus, since full credit was given on the contract for the $500 payment, it is of little moment whether it was paid wholly in cash or partly in cash and partly by a note. The plaintiff in no particular repudiated the contract purchased by her, nor does she claim any breach of it on the part of the investment company, nor did she ask any relief with respect to it.

Her alleged and resulting injury or damage relates wholly to the note purchased by her nearly two years after the purchase of the contract. Indisputably the purchase of the one was entirely separate from the other. As to the purchase of the note, the plaintiff alleged and the court found that to cheat and defraud her the investment company solicited her to buy the $473 note; that the company represented that it was given by the Whites for improvements made on the property covered by the contract; that eight monthly payments of $10 each were indorsed on the note between and including May 4 and December 5, 1928, when in truth and in fact only the first two payments had been made in cash, and the other six payments by the Whites giving the investment company their note therefor, which, it was alleged and found, had not been paid, but which the evidence without dispute shows was paid, and that such six indorsements were fraudulently put on the note by the investment company to induce the plaintiff to believe and that she did believe that the Whites had kept up the payments of the note in the amount and at the time as indicated by the indorsements; that the company represented that the note was "as good as gold and that the said defendant (the investment company) would see that the plaintiff did not lose a penny on the said note"; that the investment company "offered to discount the said note"; that the note was not indorsed by the company, and that the separate and unattached writing heretofore referred to, which the company gave the plaintiff at the time the note was purchased and delivered to her, "was not a guaranty of the payment of the note and that the said defendant knew that the said paper was not a guarantee of its payment, but that the said defendant informed the plaintiff falsely and fraudulently that the same was a guarantee of payment of the said note," and that the plaintiff, believing that the writing was a guaranty, and relying thereon, purchased the note at a 20 per cent discount for the sum of $341; that the note was valueless, and that not anything had been paid thereon

after its purchase by the plaintiff, and by reason of the promises she was damaged in the amount paid by her and interest thereon.

Since the consideration for the note as between the Whites and the investment company, or the validity of the note, was not in any particular questioned, and since the purchase of the note by the plaintiff had no connection with or relation to the contract purchased by her nearly two years prior thereto, the alleged and found misrepresentation that the note was given by the Whites for improvements on the property is, as we think, immaterial. So too as to the alleged and found manner in which the payments of $10 each were indorsed on the note. It is alleged and found that six of them were not paid in cash nor at the particular time as indorsed on the note. The evidence shows, and there does not seem to be any dispute about it, that because of the absence or contemplated absence of White from Ogden, he gave his note to the investment company for six monthly payments amounting to $60 and that such monthly payments of $10 each were indorsed on the note as having been paid monthly. The $60 note was by the investment company negotiated to the Bramwell Company, who paid the investment company the full face value of the note. Thus the Whites were given full credit for such six payments on the $473 note to the same extent as though such payments had been made in cash. Now such payments having been indorsed on the note when the plaintiff purchased it, she did so with full knowledge that such payments had been made on the note; and when she purchased it, all of such payments were deducted from the face value of the note. Since the investment company gave the Whites full credit of the eight monthly payments and so indorsed them on the note, we do not well see how the plaintiff may now predicate fraud as to the manner in which such payments were made.

But the chief contention of the plaintiff with respect to the alleged fraud practiced on her relates to the represen-

tations made by the investment company, and, as alleged by the plaintiff and found by the court, that the note "was as good as gold"; that the company stated she "would not lose a penny" on the note; that the company agreed to indorse the note and guaranteed its payment; and that the company represented to her that the assignment of the note on the separate paper or writing, unattached to the note, constituted an indorsement and a guaranty of payment of the note—all of which she testified she relied on and because thereof purchased the note. The representations that the note was "as good as gold," and that the investment company would see that the plaintiff "did not lose a penny," in and of themselves; are matters of mere opinion, exaggerated statements, and trade talk, and not actionable. So far as made to appear, the plaintiff and the investment company dealt at arm's length with equal means of knowledge, dealing with each other on equal terms and free from and uninfluenced by any fiduciary or trust relation. Before the plaintiff purchased the note, she interviewed the Whites with respect to it. Up to the time of the purchase of the note, the Whites had kept up their payments on the contract purchased by the plaintiff nearly two years prior thereto. She herself testified that she had been dealing with the Whites for a year or more, that they had made their payments on the contract, and that she was satisfied with their ability to pay the note. Not anything is shown or made to appear, nor is there any claim made, that the plaintiff had not equal means with the investment company to find out the financial responsibility of the Whites, nor is it shown or made to appear or any claim made that there was anything with respect to their financial responsibility or inability to pay the note which was peculiarly within the knowledge of the investment company and not of the plaintiff, or that any such matter was withheld from the plaintiff by the company. It was shown that about six months or more after the plaintiff purchased the note, White went into bankruptcy. If when

the plaintiff purchased the note White was then insolvent, not anything is made to appear that the investment company had knowledge of such fact. The plaintiff testified she had no knowledge of White's delinquency until January, 1930, when he surrendered his contract to the plaintiff and she took possession of the property. We are thus of the opinion that no actionable fraud may be predicated on such claimed representations.

We thus proceed to a consideration of the separate writing signed by the company and delivered to the plaintiff. If, as found by the court that the separate writing did not constitute an indorsement because not attached to the note (Comp. Laws Utah 1917, § 4060, 5 U. L. A. 257) and no indorsement by the company on the note itself or for other reasons the court held the writing not an indorsement, and if as also found by the court and testified to by the plaintiff that the company agreed to indorse the note and guaranteed its payment and that it was the intention of the parties that the company was to indorse the note but had not done so, the plaintiff [Comp. Laws Utah, 1917, § 4078, 5 U. L. A. 275, *Parr* v. *Ft. Pierce Bank & Trust Company*, 100 Fla. 941, 130 So. 445, *Miller* v. *Shelby County Investment Co*. (Tex. Civ. App.) 30 S. W. (2d) 668], had the right to compel an indorsement; or if, as between the immediate parties the writing, being contemporaneous with the transfer and purchase of the note, may with its transfer and delivery be regarded as an indorsement (8 C. J. 357) the plaintiff did not pursue any such course. She pursued a contrary course, one not on the note as a holder, but in repudiation of the sale and purchase of the note. The effect of her testimony is that she relied upon the statement made by the company that the writing given her was a guaranty of the payment of the note, in effect amounted to an unqualified indorsement, and that, had she known that the company had not given her "an absolute guaranty," she would not have purchased the note. But on the theory on which she planted her action,

fraud and misrepresentation, the serious question is whether she in law had the right to rely—the court found she did rely—on the statement and representation of the company as to the character and legal effect of the writing. The general rule is that misrepresentations of law or of the legal effect of contracts and writings does not constitute remedial fraud. 12 R. C. L. 295; 26 C. J. 1207; *Bilafsky* v. *Conveyancers' Title Ins. Co.,* 192 Mass. 504, 78 N. E. 534; *Emerson-Brantingham Implement Co.* v. *Anderson,* 58 Mont. 617, 194 P. 160; *Wood* v. *Roeder,* 50 Neb. 476, 70 N. W. 21; *Burt* v. *Bowles,* 69 Ind. 1; *Rheingans* v. *Smith,* 161 Cal. 362, 119 P. 494, Ann. Cas. 1913B, 1140; *Georgia Home Ins. Co.* v. *Warten,* 113 Ala. 479, 22 So. 288, 59 Am. St. Rep. 129; *Mutual Life Ins. Co.* v. *Phinney,* 178 U. S. 327, 20 S. Ct. 906, 44 L. Ed. 1088; *Sturm* v. *Boker,* 150 U. S. 312, 14 S. Ct. 99, 37 L. Ed. 1093. There are exceptions to the rule, or rather circumstances or conditions rendering it inapplicable, but none of them are here present.

It is apparent that what the plaintiff chiefly relied on was the alleged and found representation as to the character and legal effect of the writing given her by the company simultaneously with the purchase and transfer of the note; but, as shown by the authorities, and for the reasons stated by them, the plaintiff in law was not permitted to rely on such representations or opinions, and hence may not be permitted to say she was misled by them.

It thus follows that the judgment of the court below must be reversed and vacated, and the cause remanded for a new trial, with costs to the appellant. Such is the order.

CHERRY, C. J. and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.