HULL v. FLINDERS.

No. 5139.    Decided December 4, 1933.    (27 P. [2d] 56.)

*Thatcher & Young,* of Ogden, for appellant.

*De Vine, Howell & Stine,* of Ogden, for respondent.

FOLLAND, Justice.

This is an action to recover damages for alleged fraud. Defendant's general demurrer to plaintiff's second amended complaint having been sustained, and plaintiff having elected to stand on such complaint, a judgment dismissing the action was made and entered in the district court of Weber county. From the judgment of dismissal plaintiff appeals.

The complaint alleges that defendant organized the General Finance Company; that he and his son subscribed for a majority of its stock; that defendant became president and general manager; that the company was organized to take over the real estate and insurance business theretofore conducted by defendant; that plaintiff employed defendant as a real estate broker, and the latter effected a trade of plaintiff's farm for a home in Ogden upon which there was a mortgage of $3,500 payable in installments not yet due; and that defendant was the agent of the mortgagee. Plaintiff had $3,500 in cash with which he desired to pay the mortgage, but defendant stated the mortgagee would not receive it. It is further alleged that on or about July 11, 1927, the defendant, for the purpose of defrauding plaintiff, falsely and fraudulently stated and promised that, if plaintiff would pay over to defendant this money, he (the defendant) would pay said mortgage as and when it became due and as a guaranty of his performance he would deposit in escrow bonds of the General Finance Company of the value of $3,500; that, if defendant failed to make said payments or if he died, these bonds would be ample protection to plaintiff against loss. It is then alleged that defendant had no intention of fulfilling said promise when made, but that it was made with intent to defraud plaintiff of his money; that, to induce plaintiff to pay over his money to the defendant, the defendant made false and fraudulent representations concerning the General Finance Company by stating that it had assets of from $75,000 to $100,000; that it was as safe as any bank in Ogden; that its bonds were as good as gold coin; that, by accepting these bonds as collateral security, plaintiff would be as safe as if he had deposited his money in any bank in Ogden to await maturity of the mortgage indebtedness. Plaintiff alleged his ignorance concerning corporate matters, a lack of knowledge concerning the General Finance Company, his lack of schooling, impaired eyesight, his failure to read the purported contract before signing, the assurance of de-

fendant that it correctly set forth their agreement, and the confidence he reposed in defendant. He then alleged the signing of a written contract with the General Finance Company and the making of a check for $3,500 payable to the General Finance Company; that the contract was drawn and the check was made out by defendant and presented by him to plaintiff to sign; that plaintiff signed the contract and the check upon the representations of the defendant; that the written agreement contained the promise on his part to pay the mortgage as and when it became due; that the defendant deposited the money to the general account of the General Finance Company which received the benefits therefrom. The falsity of each of the respresentations is pleaded with particluarity to the effect that the agreement as written was not as represented; that, instead of it being the obligation of the defendant personally, it was in fact made the obligation of the General Finance Company, and was signed by the defendant as its president; that, instead of the defendant depositing bonds of the company as collateral, he issued and deposited unissued preferred stock of that company of the par value of $3,500 as a guaranty of its own promise to pay the mortgage; that the representations concerning solvency, financial responsibility, and the assets, the net value, and the value of its preferred stock were all false and untrue, all of which was known to the defendant and unknown to the plaintiff, who relied upon the representations as made. It is alleged that the corporation partly performed by paying $400 in installments when due on the mortgage, and, when the next installment became due, plaintiff learned of the failure of the corporation to pay such installment because of its insolvency, and then for the first time learned of the fraud and that it was the corporation and not the defendant who had by the written contract obligated itself to pay the mortgage. It is alleged that the corporation is insolvent and unable to pay the balance of the mortgage, and that the collateral is worthless, that there is a balance still unpaid on the mortgage of $3,100

which plaintiff must pay to protect his property. Plaintiff alleged that upon discovering the fraud he elected to affirm the contract and pursue his remedy for damages against the defendant.

Plaintiff contends this complaint states a cause of action in deceit, and that it alleges a promise or agreement made by defendant fraudulently with no present intention of performing, and, in addition thereto, that it alleges false representations with respect to the character and value of the security defendant promised to post as security for the payment of the mortgage. Defendant contends that the facts alleged indicate merely that plaintiff had an option of two remedies, viz. an action against the defendant for money had and received, or an action for damages for breach of contract, and, since plaintiff did not seek to recover by either of these remedies, the demurrer to the complaint was rightly sustained; that all the allegations with respect to the relations with, and value of the securities of, the General Finance Company are surplusage.

Assuming the complaint does not state a cause of action in deceit, it does not follow that it fails to state any cause of action. It alleges the promise of defendant to pay the $3,500 mortgage, the payment by plaintiff to the defendant of $3,500 in cash in consideration of such promise, the payment of $400 on the mortgage by the General Finance Company, the failure to pay the balance of $3,100 due on the mortgage, and a prayer for $3,100. Such allegations, if all allegations in the complaint relating to the alleged fraud be stricken, yet sufficiently state a cause of action for breach of contract to withstand a general demurrer.

The complaint, however, states a cause of action in deceit. The complaint is bottomed, not on breach of contract, but on misrepresentation and the substitution of the corporation instead of the defendant as the one obligated to perform the promise made of payment of install-

ments as they became due on the mortgage. Plaintiff relies on the rule that an action for fraud may be predicated on a promise accompanied by the present intention not to perform it, made for the purpose of deceiving the promisee, thereby inducing him to act where otherwise he would not have done so, and by virtue of which he parted with his money. 12 R. C. L. 261; 27 C. J. 35, see annotations 51 A. L. R. 46; *Snyder* v. *City Bond & Finance Co.*, 106 Cal. App. 745, 289 P. 859. This rule is supported very generally and is said to be the majority rule. The theory on which it is based is well stated in 12 R. C. L. 262, as follows:

"The rule is based on the theory that one who promises another to do something in the future as a consideration or inducement to him to do anything, impliedly asserts a present intent to carry out his promise; that the intention to deceive is a condition of mind, which, when it exists, is as much a fact as is a condition of the body, notwithstanding that it is more difficult to prove; and that, therefore, a misstatement of a man's mind is a misstatement of fact. The gist of the fraud, in such cases, is not the breach of a promise, but the fraudulent intent of the promisor or obligor at the time he makes the promise or executed the contract, not to perform the same, and to deceive the obligee by his false promise. Hence to render nonperformance fraudulent the intention not to perform must exist when the promise is made, and if the promise is made in good faith when the contract is entered into there is no fraud though the promisor subsequently changes his mind and fails or refuses to perform."

Some courts, a numerical minority, hold that fraud cannot be predicated on a mere promise, even though accompanied by a present intention not to perform, on the ground that even under such circumstances the promise is not the misrepresentation of an existing fact. Where the minority rule is followed, it is held that the remedy in such case, if any, is to sue upon the promise. 12 R. C. L. 262. We are inclined to follow the majority rule and hold the complaint states a cause of action for misrepresetation of a fact, in that the allegation is that defendant made the promise to pay the mortgage and to post as security $3,500 of bonds of the General Finance Company, and at the time he had no

present intention of keeping his promise, because he at once drew a contract in writing, which plaintiff says he did not and could not read and did not agree to, wherein the obligations defendant had promised to assume were shifted to the corporation of which he was an officer, and, instead of bonds, mere stock of the company was posted as security.

Clearly there are false representations alleged respecting the preferred stock deposited as collateral security which are actionable. The allegations are that defendant promised to deposit in escrow bonds of the General ■ Finance Company, whereas not bonds but shares of preferred stock were deposited; that defendant represented this corporation to be a "big company" with assets of from $75,000 to $100,000; that it was as safe as any bank in Ogden, and its bonds were as good as gold coin of like amount; and that all these representations were false and untrue. While some of these alleged representations are mere matter of opinion, *Ackerman* v. *Bramwell Inv. Co.* (Utah) 12 P. (2d) 623, yet the statements regarding the size and assets of the corporation made by the defendant who, as an officer of the company, knew the facts, are representations of fact, and, if untrue, and known by the defendant at the time to be untrue, or made with reckless disregard of the truth, furnished ground for an action in deceit. *Blewett* v. *Ward,* 159 Wash. 651, 294 P. 577.

Plaintiff alleged that, when he learned of the fact that the General Finance Company had obligated itself to make the payments on the mortgage instead of the defendant, he elected to stand on the contract and seek his remedy against the defendant in damages for the fraud. ■ While expressing doubt that plaintiff had alleged the ratification of a fraudulent transaction, defendant nevertheless argues and cites cases in support of the view that, where one having entered into a contract induced by fraud, after being fully informed of the fraud, voluntarily confirms, ratifies, performs, and exacts performance of the contract,

thereby condones the fraud, that such ratification relates to the time of the contract, confirms it from its date, and purges it of the fraud. *Kingman & Co.* v. *Stoddard,* 85 F. 740, 745, 29 C. C. A. 413; *Simon* v. *Goodyear Metallic Rubber Shoe Co.,* 105 F. 573, 44 C. C. A. 612, 52 L. R. A. 745. The facts alleged in plaintiff's complaint do not bring the transaction within this rule. The contract was fully executed by plaintiff, and had been partly executed by the corporation by its payment of $400 on the mortgage. When plaintiff, as is alleged, became aware of the fraud, he thereupon affirmed the contract as to what had been done under it and brought his action for deceit. The distinction is clearly indicated in *Kingman & Company* v. *Stoddard,* supra, wherein it is said:

"The rule is well settled that one who has been induced, through fraud, to enter into a contract has the election either to rescind, tendering back that which he has received, or, affirming the contract, he may have his action for deceit to recover the damages sustained. We, however, understand this rule to have application to a contract executed wholly or in part, and that the affirmance here spoken of has relation to the completed transaction; that is to say, if rescission be desired, and restoration of that received be not made, the contract is affirmed as to whatever has been done under it, and the defrauded party may still have his action for deceit. But we also understand the rule to be that if he become advised of the fraud perpetrated upon him in season to recede from his engagement, and yet, with knowledge of the falsity of the representations which had induced the contract, elects to perform, and clearly manifests his intention to abide by the contract, he condones the fraud and is without remedy." See, also, 12 R. C. L. 406.

The judgment of dismissal is set aside, with directions to the district court of Weber county to overrule the demurrer and proceed with the cause; costs to appellant.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.