NIELSON v. LEAMINGTON MINES &
EXPLORATION CORPORATION.

No. 5564.   Decided August 15, 1935.   (48 P. [2d] 439.)

K. K. *Steffensen,* of Salt Lake City, for appellant.

C. D. *McNeely,* of Delta, and *Claude F. Baker,* of Eureka, for respondent.

EPHRAIM HANSON, Justice.

This action was brought in the lower court to set aside a deed to certain mining claims situated in Millard county, Utah, executed by plaintiff to the defendant. The complaint alleges in substance that plaintiff on March 9, 1931, was induced by the false and fraudulent representations of defendant, to enter into an oral agreement with defendant to the effect that plaintiff would convey said mining claims to defendant and in consideration thereof defendant would place machinery on said claims for their development and start effective ore exploratory and development work upon said claims and proceed effectively to develop said claims; and further that defendant would forthwith issue and deliver to plaintiff 100,000 shares of its fully paid and non-

assessable capital stock. It is then alleged that defendant falsely represented it had "modernly effective machinery" for development of said claims, consisting of "modern compressor outfit complete with all necessary tools and other equipment for the immediate and effective development in modern and proper mining methods of said claims"; that defendant also falsely represented it was adequately financed for the purposes of the complete exploration and ore development of said claims. Plaintiff alleges he relied on said representations; that they were false and untrue and known by defendants to be false and untrue, and were made to induce him to deed said mining claims to defendant; that, so relying on said representations, plaintiff executed and delivered a deed to said claims March 9, 1931; that defendant failed and refused to deliver said 100,000 shares of its stock to plaintiff's father as agreed, and the promise to deliver the stock was made without any intention to deliver the same and solely for the purpose of obtaining said claims without consideration; that defendant had no mining equipment and no funds for development purposes, and no work has ever been done on said claims.

Defendant, in its answer, after denying generally, alleged that it was incorporated March 10, 1931; that plaintiff read the articles of incorporation before they were filed and assented to the same; that plaintiff's father, Louis Nielson, was one of the incorporators and was vice president of defendant company and knew the affairs of the company and its condition both as to raising money and obtaining machinery for development purposes; that the mining claims were conveyed to defendant in payment of 500,000 shares of its capital stock of which Louis Nielson was to have 160,000 shares; that it was agreed that all the incorporators would set aside a total of 210,000 shares of the stock so paid for to sell and secure money for development work; that it was agreed the stock would not be issued until the board of directors decided so to do; that plaintiff knew defendant had no machinery and had no funds and that funds

for buying machinery and developing the property would have to be raised by sale of the stock; that attempts were made to sell the stock, but because of conditions in the silver-lead market no stock could be sold. Defendant further alleged that although plaintiff knew immediately that the company had no funds or machinery, he nevertheless continued to take an active part in the affairs of defendant and made contracts with third parties for purchase of stock and ratified other contracts made by defendant, and so should not be permitted to rely on any fraudulent representations.

The lower court found in favor of plaintiff and entered judgment accordingly, setting aside the deed and quieting plaintiff's title to said mining claims. The findings of fact follow almost identically the language of the complaint so far as the alleged misrepresentations are concerned. At the conclusion of plaintiff's case defendant moved for a nonsuit upon several grounds, all of which related to plaintiff's failure to prove the necessary allegations of the complaint. While the refusal of the trial court to grant the motion for nonsuit is assigned as error and is argued at length, we prefer to dispose of the issues involved upon the assignments of error attacking the judgment entered in plaintiff's favor upon the ground that the evidence of fraud is not sufficient to sustain the judgment.

It appears from certain allegations of the complaint that the fraud relied upon consists of two elements: First, fraudulent representations inducing the plaintiff to enter into a contract to convey the mining claims; and, second, the entering into said contract by defendant without any intention whatever of fulfilling its part of the agreement and thereby securing the claims with fraudulent intent. The fraudulent representations relied on in the complaint are the following:

(a) "That defendant had modernly effective machinery for development of said claims" consisting of a modern compressor outfit complete with all necessary tools and other equipment for immediate and effective development of said claims.

(b) That defendant was "adequately financed for the purposes of the complete exploration and ore development of said claims."

The evidence shows that the title to the mining claims was in plaintiff, but his father, Louis Nielson, and other members of his family, claimed an interest in the claims. Plaintiff's father was plaintiff's agent in all things pertaining to these claims, and, apparently, the preliminary negotiations concerning the organization of the defendant company and its acquisition of the mining property were with him. Louis Nielson testified that on March 8, 1931, Mr. Garn and some unnamed party visited the mining claims and delivered to him a draft of the proposed articles of incorporation. Mr. Overson was present and read the articles to him and he approved of them. While at the claims, Garn stated to Nielson that "they" had money and machinery; that a Mrs. Snyder had the machinery in Idaho which the company would get and put on the claims. It was Mr. Nielson's understanding she was turning over the machinery for her stock, she being one of the incorporators. Nowhere does it appear who was included in the word "they," except that Nielson says that Garn told him Mrs. Snyder had money which she would invest in the company, no specific amount being mentioned. Garn further stated they would go to work in thirty days.

Clyde Overson testified that he was present when Garn came to the claims on March 8, 1931, and the witness read the articles to Nielson. Overson testified that Garn said Mrs. Snyder was putting up the machinery for her stock and "these other parties had money they would put in, this fellow he had with him, I don't recall his name, he had money that he would put in for developing the property." He also testified that Garn said Mrs. Snyder had some money.

Plaintiff testified that on March 8, 1931, Garn came to Louis Nielson's home and plaintiff there read the proposed articles of incorporation. His testimony concerning the conversation is as follows:

"It (the articles of incorporation) stated the stock was for the deed. I said 'How is this stock paid for?' I said 'I see we are to have 100,000 shares of stock for the ground, how are you other fellows paying for the stock? They said that Mrs. Snyder had the machinery to put on the ground. The rest of them, Mr. Steffensen was to do the legal services and the others were to pay for the stock. I suggested this be put in writing * * * I would want to know that the money and the machinery is coming. He told me Mrs. Snyder is putting the machinery up. I says, 'How about the money?' 'You tell me you have it, how am I to know you have the machinery?' Mr. Garn said I needn't worry about it. 'Our word is as good as law.' I says, 'If you tell me that you have this money and machinery all ready to put on the ground, I will sign the deed over to you.' He said the work would be started in thirty days and I signed the deed."

The evidence further shows that plaintiff read the articles of incorporation and approved them. On March 9, 1931, he executed the deed to the defendant. Thereupon the articles were filed and the incorporation completed. Mr. Garn testified that he had the promise of Mrs. Snyder to put machinery on the property. He told the Nielsons Mrs. Snyder

"was to put up money to finance the organization of the company for her stock and we were to give her other stock for the machinery as we moved in on there."

He further testified that he never stated to the Nielsons that the company which was to be formed had funds to finance this mining development or that he or the company ever had.

"I said several times it looked like we were going to get funds to get to work soon."

The articles of incorporation introduced in evidence show that Louis Nielson subscribed for 160,000 shares of stock which, together with 340,000 shares of stock subscribed for by the other incorporators, totaling 500,000 shares, were fully paid for by the transfer of the mining claims to the company. The evidence further shows that plaintiff and his family were to retain 100,000 shares and the balance of 60,000 shares was to be placed in a pool contributed to by

all incorporators, which stock was to be sold to obtain funds for development purposes. All this was agreed to prior to incorporation.

In the case of *Campbell* v. *Zion's Co-op. Home, etc., Co.*, 46 Utah, 1, 148 P. 401, 406, this court announced the principles governing cases involving fraudulent representations by quoting and approving the following language from *Southern Development Co.* v. *Silva*, 125 U. S. 247, 8 S. Ct. 881, 31 L. Ed. 678:

"In order to establish a charge of this character the complainant must show by clear and decisive proof: First, that the defendant has made a representation in regard to a material fact; secondly, that such representation is false; thirdly, that such representation was not actually believed by the defendant, on reasonable grounds, to be true; fourthly, that it was made with intent that it should be acted on; fifthly, that it was acted on by complainant to his damage; and, sixthly, that in so acting on it the complainant was ignorant of its falsity, and reasonably believed it to be true. The first of the foregoing requisites excludes such statements as consist merely in the expression of opinion or judgment, honestly entertained; and again (excepting in peculiar cases) it excludes statements by the owner and vendor of property in respect to its value."

See, also, *Stuck et al.* v. *Delta Land & Water Co.*, 63 Utah 495, 227 P. 791; *Kinnear* v. *Prows*, 81 Utah 135, 16 P. (2d) 1094.

It is also well settled that the fraud involved "must relate to facts then existing or which have previously existed." 12 R. C. L. 254; annotation in 51 A. L. R. at page 49.

Applying these principles to the evidence adduced in this case, we are of the opinion that plaintiff has failed to sustain the burden resting upon him to prove by clear and decisive proof, fraudulent representation of some existing or pre-existing fact relied on by him and alleged in his complaint. It is clear that there was no representation that defendant had machinery. To the contrary, the company was just being organized and all parties understood that Mrs. Snyder had the machinery and

was going to let the company have it. The evidence like-
wise fails to show any representation by any one that the
defendant had money with which to finance the develop-
ment of the mining property. Plaintiff's own testimony
sustains this conclusion. Plaintiff testified:

"I says, 'If you tell me that you have this money and machinery all
ready to put on the ground, I will sign the deed over to you.' He said
the work would be started in thirty days and I signed the deed."

This clearly shows that Garn did not say the company
had either the money or the machinery at that time. Garn's
reply, to say the most for the plaintiff, simply evaded his
question and clearly indicated a present inability to
begin operations. Other evidence showed that what-    ■
ever money defendant would have would be obtained
from its incorporators and from the sale of stock. Nor was
there any representation that the incorporators had the
amount of money required for development purposes or had
any money at all, except it was represented that Mrs. Sny-
der had money and would invest in the company. There
was also some evidence that it was represented that the
unnamed party with Mr. Garn on March 8th had money.
Whether or not Mrs. Snyder and this unnamed party had
the money and machinery represented was a present fact.
But there was no proof at all that they did not in fact have
machinery and money at the time the representation was
made. To the contrary, the evidence did show that Mrs.
Snyder had both money and machinery. Proof of the falsity
of the representation was as essential as proof that the
representation was made. *Dolle* v. *Melrose Properties,* 252
Ky. 482, 67 S. W. (2d) 706.

It might also be pointed out that there is no evidence at
all as to the kind of machinery Mrs. Snyder was to furnish
nor as to the amount of money she would invest. So there
is no evidence to support the trial court's finding that this
machinery consisted of a modern compressor with all neces-
sary tools and equipment.

Any statement that Mrs. Snyder and this unnamed party would invest their money in the company and that Mrs. Snyder would let the company have her machinery would involve a prediction as to their future conduct and would be in the nature of a mere opinion and therefore would not be actionable. *Ackerman* v. *Bramwell Inv. Co.*, 80 Utah 52, 12 P. (2d) 623; 26 C. J. 1089; 51 A. L. R. note at page 49.

There is no evidence tending to show that when these statements as to what Mrs. Snyder or the other party would do were made Garn made such statement with an actual fraudulent intent, intending to deceive or defraud plaintiff. Rather it appears that he honestly believed they would do as they had promised him.

We come now to a consideration of the contention that the claimed agreement between Garn and plaintiff relative to the transfer of the mining claims by plaintiff in consideration of the issuance of 100,000 shares of stock ot plaintiff's father and the promise of Garn that defendant would place the machinery on the property at once and start development work and proceed to develop the mine was made by Garn with the fraudulent intent of obtaining said mining claims from plaintiff. To predicate a cause of action in fraud upon a failure to perform a promise, there must be an intention on the part of the promisor at the time of making the promise not to perform it.

"If the promise is made in good faith when the contract is entered into there is no fraud, though the promisor subsequently changes his mind and fails or refuses to perform." 12 R. C. L. 262; *Hull* v. *Flinders*, 83 Utah 158, 27 P. (2d) 56. Nonperformance of the promise alone is not evidence of fraud. 12 R. C. L. 255.

The evidence in this case fails to show any lack of good faith in making the contract or any intent on Garn's part not to perform his agreements, assuming that the agreement relied on by plaintiff was made. A conscientious effort was made by Garn with the assist-

ance of plaintiff and his father to sell stock and to promote the development of the mining properties.

Plaintiff has argued at some length that he has received nothing for his mining claims. This involves merely the failure on Garn's part to perform as the plaintiff contends he agreed and cannot be made the basis of an equitable action founded on fraud in the absence of evidence showing the promises of Garn were fraudulently made within the rules hereinabove stated; for actually plaintiff got his 100,000 shares of stock as agreed, although it may not have been worth much owing to the failure to do development work. The articles of incorporation show that plaintiff's father, as one of the incorporators, is the owner of the shares of stock agreed to be given him for the mining claims. The fact that no stock certificate was issued does not affect such ownership. 14 C. J. 478, 481, 482; *Robey* v. *Hardy,* 63 Utah 231, 224 P. 889; Fletcher Cyc. Corps. vol. 5, § 3427, p. 5610. The evidence shows that no stock certificates were issued to any of the incorporators, but they all, including the plaintiff's father, exercised the same rights as stockholders as they could or would have done if certificates had been actually issued. The stock may have been of little or no value under the circumstances. Plaintiff may have made a bad bargain, but before he can recover he must make a case within the equitable principles governing the right to the relief sought. We cannot be influenced by any other considerations.

We have assumed, in disposing of this case, that, although the representations relied on by plaintiff were made by Garn, a promotor of defendant company, before its incorporation, such representations could be attributed to the company. However, we do not wish to be understood as so holding. On that point we express no opinion.

Because of our views herein expressed it is not necessary to pass upon other questions presented and argued by the respective parties.

It is ordered that the judgment and decree of the district court be reversed, vacated, and set aside, and that judgment be entered herein in favor of defendant dismissing plaintiff's complaint. Defendant to recover costs.

ELIAS HANSEN, C. J., and FOLLAND, MOFFAT, and WOLFE, JJ., concur.