377 P.2d 1004

Elbert G. BENNETT and Marjorie C. Bennett, his wife, Plaintiffs and Appellants,

v.

Arnold Dee WHITE and Erma M. White, his wife, and General Investment Corporation, a corporation, Defendants and Respondents.

GENERAL INVESTMENT CORPORATION, a Utah corporation, Plaintiff and Respondent,

v.

Elbert G. BENNETT and Marjorie C. Bennett, his wife, Defendants and Appellants.

No. 9633.

Supreme Court of Utah.

Jan. 24, 1963.

---

6. Bennett v. Preferred Acc. Ins. Co. of New York, supra n. 4.

Elbert G. Bennett, pro se.

Woodrow D. White, Homer M. Jensen, Salt Lake City, for respondents.

McDONOUGH, Justice.

This is an action in equity for rescission of a construction contract on the ground of fraud.

In June of 1960, Bennetts approached White about purchasing a building lot. Mr. Bennett was at that time a recent law school graduate. Mr. White was a building contractor of some 18 years' experience. After some discussion it was agreed that White would build a home for Bennetts on one of his lots (White's) for a down payment of $2,000. Mrs. Bennett examined plans with White and his house designer, and a design was agreed upon. Near the end of June the down payment was made and a contract was signed for a house to cost $30,975.

During the course of the construction, which commenced immediately, the Bennetts were at the building site almost daily. During that time a number of changes in the plans were made or discussed. Of particular significance were the substitution of a wooden basement floor for the concrete one originally specified, the installation of an open stairway to the basement instead of the one originally planned, and discussion of the size and convenience of a bathroom adjoining the master bedroom.

As the home neared completion, Mr. White and the Bennetts had a discussion wherein price adjustments were made for some of the changes in the plans which occurred during construction. These adjustments were embodied in a new contract, signed on October 25, 1960, which recited $31,433 as the sale price. The contract is entitled "Uniform Real Estate Contract." It contains a provision that payments are to be made "at the office of seller, his assigns, or order," which payments were to be made as follows:

> $190.00 or more on or before the 25th day of November, 1960, and $190.00 or more on or before the 25th day of each and every month thereafter until February 25, 1961; $200.00 or more on or before the 25th day of March, 1961, and $200.00 or more on or before the 25th day of each and every month thereafter until principal and interest have been paid in full. Buyer agrees to refinance the above property on or before October 25, 1964, and pay seller's equity in full.

A mortgage of $20,000 held by First Federal Savings and Loan Association on the property and a 30-day grace period are recited. Other provisions are those found in the standard Uniform Real Estate Contract in this state.

Due to a termination of the lease at their former residence, Bennetts moved in at the time the latter contract was signed, although there were portions of the home uncompleted.

The day following the execution of this contract, White assigned his interest to General Investment Corporation. The assignee's representative had been in the home during the week prior to the signing of the contract and had at that time had some conversation with the Bennetts.

It is not clear what amount of work was done by White on the house after Bennetts moved in. Upon complaint by Bennetts, and after an inspection, the State Department of Contractors wrote a letter to White listing several corrections which had to be made in the house. These corrections were made, but there is a conflict to evidence as to when this was done.

On November 25, General Investment Corporation received a notice of rescission from Bennetts accompanied by the keys to the house. On that same day General Investment Corporation instituted an action against Bennetts for the unpaid balance due under the contract. Bennett filed suit against White on December 9, 1960, for rescission of the contract. The decision in the suit by General Investment was, by stipulation, made contingent upon the outcome of the second action.

In his amended complaint, Bennett sets out two causes of action. First, an action for rescission of the contract based on the fraud of White. The fraud alleged was that Bennett was induced to sign the contract by representations by White that White would (a) retain his interest in the contract for 3½ years, and (b) that he would complete the building in a workmanlike manner, but that when the contract was signed, White did not intend to comply with either representation. The second count is an action for rescission based on breach of the contract which the court was requested to reform to contain an alleged oral agreement of the parties embodying the points (a) and (b) in the first count

The suit was tried before an advisory jury which answered affirmatively three special interrogatories which found in substance (1) that at the time notice of rescission was served the house remained "substantially not completed," (2) that at the time the final contract was signed, White did not then intend to proceed with the contract to substantial completion, and (3) that between October 25 and November 25 White stated to Bennetts to the effect "that he did not intend to do any more work on the house." On motion of the defendant the trial judge granted a judgment notwith-

standing the verdict of no cause of action. The question presented to us is whether that judgment is in accord with the weight of the evidence. We think it is.

■■■ A finding of fraud necessary to overturn a written contract must be sustained by "clear and convincing evidence" or to the point "where there remains no serious or substantial doubt as to the correctness of the conclusion."[1] Here plaintiff had to meet this burden by proving both that White had the necessary fraudulent intent and that he had such an intent at the time the final contract was signed.[2]

To prove their case appellants rely on testimony that respondent spoke and acted in such a manner as to cause appellants to repose special trust in him, particularly that respondent said that he would "carry the contract" for four years in view of appellants' insecure financial position, and that the home would be properly completed. Appellants say that the assignment of the contract the day following its execution, testimony that several days after the execution of the contract White said he would not complete the building, respondent's actual failure to complete all improvements coupled with testimony that the house was poorly constructed all prove the necessary fraudulent intent at the time the contract

was executed. While that testimony may lead to such a conclusion, it is also reasonable to conclude that if respondent did decide not to complete the building, such a decision was made after the contract was signed.

To prove that White had no fraudulent intent respondent points to White's experience in the building trade, appellants' legal training, and the benevolence of respondent toward appellants in making a home available to them for a small initial outlay. He cites testimony that both at the time the contract was signed and thereafter, White intended to complete the building; that extras were included in the home without charge to appellants; that the house contained average or better workmanship; that all alterations in the original plan were agreed to by appellants, and that the contract was signed without dispute as to its conditions. Respondent points to the contract provisions which provide for payment to any assignees of White and also includes an arrangement for payments whereby White received no return on his equity in the house for four years, and appellants could not be required to refinance for four years. These latter provisions, he argues, incorporate any understanding between the parties as to White "carrying" the contract.

1.  Rubey v. Wood, 13 Utah 2d 285, 373 P. 2d 386 (1962); Greener v. Greener, 116 Utah 571, 212 P.2d 194 (1949).

2.  Hull v. Flinders, 83 Utah 158, 27 P.2d 56 (1933); Nielson v. Leamington Mines and Exploration Corp., 87 Utah 69, 48 P.2d 439 (1935).

Considering both direct and circumstantial evidence, and in view of the several reasonable conclusions which can be drawn from the testimony relied upon by appellants, we think that the trial court correctly ruled that appellants failed to prove by clear and convincing evidence the required fraudulent intent on the part of respondent at the time the contract was executed.

What we have said disposes of both contentions of appellants.

Judgment affirmed. Costs to respondent.

HENRIOD, C. J., and CALLISTER, CROCKETT and WADE, JJ., concur.