CERRITOS TRUCKING CO., a California corporation, and Cerritos Trucking Co., Donald E. Heimark, James B. Fleming and William L. Fariester dba Cerritos Associates, a partnership, Plaintiffs and Respondents,

v.

UTAH VENTURE NO. 1, William J. Lowenberg, Fern E. Lowenberg, and Utah Development Company, Inc., a Utah corporation, Defendants and Appellants.

UTAH DEVELOPMENT COMPANY, INC., a corporation and William J. Lowenberg, Cross-Plaintiffs and Appellants,

v.

BETTILYON REALTY COMPANY, a corporation, and Edmond O. Dunahoo, Cross-Defendants and Respondents.

No. 17185.

Supreme Court of Utah.

March 18, 1982.

Robert A. Peterson, Salt Lake City, for defendants and appellants.

Joseph C. Rust, Salt Lake City, for Dunahoo.

Gary A. Weston, Salt Lake City, for Bettilyon.

HOWE, Justice:

Plaintiffs Cerritos Trucking Co. and its successor in interest, Cerritos Associates, (Cerritos) brought this action for damages and for specific performance of an option to purchase real property. The defendants, William J. Lowenberg, Utah Venture No. 1, and Utah Development Company, Inc., sought rescission of the option, and damages from the plaintiffs and from the cross-defendants, Bettilyon Realty Company and

Edmond O. Dunahoo, on the basis of alleged misrepresentation, mutual mistake and breach of fiduciary duty. The trial court granted motions by the plaintiffs and by the cross-defendants for a directed verdict. Defendants appeal.

In 1977 the defendant Lowenberg purchased a parcel of real estate located at the International Center near the Salt Lake City International Airport.[1] Thereafter he began constructing a warehouse on the property. As the warehouse was nearing completion, Lowenberg contacted several realtors to assist him in finding tenants. Among the realtors he contacted was Gerald Daughtrey of Bettilyon Realty Company.

Fiber Sciences, a subsidiary of EDO, a publicly traded New York Corporation, had contacted Bettilyon Realty and requested help in locating warehouse space in Salt Lake City. Fiber Sciences was engaged in the manufacturing of water and waste tank systems for aircraft. In April of 1978 Bettilyon's representative, Gerald Daughtrey, showed the officers of Fiber Sciences the Lowenberg property along with other properties. Edmond O. Dunahoo, the president of Fiber Sciences and one of the cross-defendants herein, determined that the Lowenberg property was acceptable for their manufacturing and warehouse needs. When, however, the officers of Fiber Sciences presented a purchase proposal to the parent corporation, EDO, they were informed that Fiber Sciences should lease and not purchase. An offer to lease a portion of the warehouse was subsequently presented to Lowenberg by Fiber Sciences through Daughtrey. The offer was rejected by Lowenberg and no subsequent offers were made by Fiber Sciences.

Later that same month, Dunahoo met with Donald Heimark, an officer of Cerritos. Heimark became interested in purchasing the Lowenberg property for investment purposes with the possible participation in the purchase by some of the officers of Fiber Sciences in their individual capacities. Heimark was a personal friend of Dunahoo and a "handshake agreement" was entered whereby Cerritos would obtain a lease with an option to purchase, and the officers of Fiber Sciences would participate in the purchase and ownership of the property to an extent to be later determined.

Daughtrey then submitted to Lowenberg a written proposal on behalf of Cerritos for the lease of the warehouse with an option to purchase it. A verbal agreement was reached and Lowenberg instructed his attorney to draft the necessary documents. On April 28, 1978 Cerritos and Lowenberg executed the lease containing an option to purchase in favor of Cerritos. Shortly thereafter Cerritos sublet a portion of the warehouse to Fiber Sciences. Later, in the summer of 1978 EDO informed Dunahoo and the other officers of Fiber Sciences that they could not participate in the purchase of the property since it would present a conflict of interest which would require disclosure to EDO's shareholders.

Sometime in January of 1979 Lowenberg learned that neither Fiber Sciences nor any of its officers would be participating in the purchase of the warehouse. On February 28, 1979 Cerritos exercised its option to purchase the property and tendered payment for the property. Lowenberg refused to convey the property claiming that he had granted the option to Cerritos on a representation made to him by Daughtrey that some of the officers of Fiber Sciences would participate in the purchase thereof along with Cerritos. Lowenberg claimed that but for that representation, he would not have granted an option to sell the property. He maintained that he had agreed to sell at a lower price in an effort to curry future business favors from Fiber Sciences.

When Lowenberg refused to perform, plaintiffs brought this action to enforce the option and to recover damages amounting to the difference between Lowenberg's mortgage payment on the property and

---

1. Defendants Utah Venture No. 1 and Utah Development Company, Inc., are entities owned and controlled by defendant Lowenberg and each held legal title to the property at different times during the events of this action.

Cerritos' lease payment, which plaintiffs continued to tender after Lowenberg refused to honor the option. Lowenberg counterclaimed against the plaintiffs for a rescission of the option based on misrepresentation and cross-claimed against Bettilyon alleging that it and Dunahoo had breached fiduciary duties owing him.

After both parties had presented their evidence to a jury, Cerritos, Dunahoo and Bettilyon made motions for a directed verdict. The motions were granted and defendants' counterclaims and cross-claims were dismissed. Defendants appeal claiming that the trial judge erred in granting the motions for directed verdict since evidence was presented from which the jury could have found in their favor on their claims of misrepresentation and breach of duties of trust and confidence. Defendants also allege that the trial judge erred by applying the wrong legal standard to the motions for directed verdict and by signing findings of fact and conclusions of law subsequent to the granting of the motion.

■ A motion for directed verdict is a method of testing the legal sufficiency of the evidence presented. This Court has often stated that in deciding a motion for a directed verdict all evidence must be considered by the trial court in the light most favorable to the party against whom it is directed. *Kim v. Anderson*, Utah, 610 P.2d 1270 (1980); *Asay v. Rappleye*, Utah, 593 P.2d 132 (1979). The case should not be taken from the jury by the granting of the motion where there is any substantial dispute in the evidence. *Flynn v. W. P. Harlin Construction Co.*, 29 Utah 2d 327, 509 P.2d 356 (1973). On appeal we apply these same rules. See *Kim*, supra, and cases cited therein.

■ Defendants claim that a representation was made to Lowenberg that it was presently intended and agreed upon by Cerritos and the officers of Fiber Sciences that they would jointly participate in the purchase of the property. Lowenberg maintains that this was a representation of a present state of mind, intention and agreement, that he relied upon it to his detriment

and he should now be relieved from the option he granted to the plaintiffs. The jurisprudence of this state has long recognized as actionable deceit a promise accompanied by the present intention not to perform it, made for the purpose of deceiving the promissee, thereby inducing him to act where otherwise he would not have done so, and by virtue of which he parts with his money or property. *Papanikolas v. Sampson*, 73 Utah 404, 274 P. 856 (1929). In *Hull v. Flinders*, 83 Utah 158, 27 P.2d 56 (1933), we followed that rule, recognizing it to be the majority rule in this country. We quoted with approval the following from 12 R.C.L. 262:

> The rule is based on the theory that one who promises another to do something in the future as a condition or inducement to him to do anything, impliedly asserts a present intent to carry out his promise; that the intention to deceive is a condition of mind, which, when it exists, is as much a fact as is a condition of the body, notwithstanding that it is much more difficult to prove; and that, therefore, a misstatement of a man's mind is a misstatement of fact.

83 Utah at 163, 27 P.2d at 57. We again recognized the rule in *Nielson v. Leamington Mines & Exploration Corp.*, 87 Utah 69, 48 P.2d 439 (1935); *State v. Bruce*, 1 Utah 2d 136, 262 P.2d 960 (1953); *Berkeley Bank For Cooperatives v. Meibos*, Utah, 607 P.2d 798 (1980). See also annotations on this subject at 51 A.L.R. 46, 68 A.L.R. 635, 91 A.L.R. 1295, 125 A.L.R. 879.

■ The application of that rule avails the defendants nothing because they do not contend that when the representation was made to Lowenberg that the officers of Fiber Sciences would participate in the purchase of his property, those officers and Heimark had no intention of keeping that agreement. The evidence reflects nothing but good faith on their part and that it was not until several months after the option was granted that the parent company, EDO, disapproved of the plan of the officers to participate which led to its abandonment.

■ Defendants urge us to go further, however, and find the representation to be actionable because although it may have been their intention to participate, they were negligent in formulating that intention. They argue that the officers should have first obtained a legal opinion as to the propriety of their participating in the purchase, or in first clearing the transaction with the parent corporation before making the representation to Lowenberg. Defendants cite us to *Ellis v. Hale*, 13 Utah 2d 279, 373 P.2d 382 (1962); *Jardine v. Brunswick Corp.*, 18 Utah 2d 378, 423 P.2d 659 (1967); *Dugan v. Jones*, Utah, 615 P.2d 1239 (1980) as authority for the rule that a representation negligently made may be actionable. In those cases, however, the representation which was allegedly negligently made was a representation as to a past or present fact. Defendants do not cite us to any case law or authority, and we are aware of none, wherein the law concerning negligent misrepresentations has been extended to fact situations involving the state of a person's mind. We stated in *Hull v. Flinders*, supra, that "if the promise is made in good faith when the contract is entered into, there is no fraud though the promissor subsequently changes his mind and fails or refuses to perform." 83 Utah at 163, 27 P.2d at 58. We think the same rule should obtain when the promissor's expression of intention to perform is made in good faith even though he may have been negligent in assessing and weighing the various factors which influenced him in formulating that intention. The rule should not be extended further than a good faith test. In view of the unquestioned status of the evidence that the officers of Fiber Sciences did possess at the time the representation was made a bona fide intention to participate in the purchase, there was no basis upon which the defendants could have prevailed on their claim for rescission and the directed verdict in favor of the plaintiffs was properly granted.

■ The directed verdict on defendants' claim against Dunahoo was proper for the same reasons we have enunciated above with regard to defendants' counterclaim against plaintiffs. The directed verdict on defendants' claim against Bettilyon was also proper, but for a different reason.. Defendants claim that there was a breach of duty owed by Bettilyon and Daughtrey to them because Daughtrey did not inform them that Fiber Sciences was interested in leasing the building. Defendants argue that had they known that Fiber Sciences would have been willing to have leased the building without an option to purchase it, they would have never consented to granting an option to the plaintiffs. It is unnecessary for us to here define the exact relationship between defendants and Bettilyon and the extent of any duty owing by Bettilyon to defendants. It is sufficient to observe that Daughtrey did present to Lowenberg a verbal offer from Fiber Sciences to lease part of the building. This offer was rejected by Lowenberg. This act certainly alerted Lowenberg as to Fiber Sciences' interest in leasing the property. Lowenberg had long years of experience in the real estate business, having been a licensed real estate broker in California for over thirty years. He was fully informed and aware of Fiber Sciences' interest in the property. In view of this, his claim against Bettilyon for failing to so inform him is groundless and the court properly directed a verdict against him on that claim.

Defendants next contend that the trial judge committed reversible error by applying the wrong legal standard to the motion for directed verdict, and by weighing the evidence instead of determining whether there was at least some evidence on each essential element of the case. To substantiate this claim, defendants point to the record where it is stated:

The Court further finds that the defendant has failed in its burden of proof by a preponderance of the evidence as to the count or counts that the burden of proof is applicable, and has failed in its burden of proof by clear and convincing evidence as to the count or counts that the burden of proof is applicable.

■ Although in passing on a motion for directed verdict it is not proper for the trial court judge to weigh evidence, see cases cited above, that he did so in this case did not result in prejudicial error since the defendants were not entitled to succeed in any event. As heretofore pointed out, there was no evidence adduced by Lowenberg of an essential element of a case of misrepresentation. This Court will not reverse a trial court judgment merely because there may have been error; reversal occurs only if the error is such that there is a reasonable likelihood that, in its absence, there would have been a result more favorable to the complaining party. See *Lee v. Mitchell Funeral Home Ambulance Service*, Utah, 606 P.2d 259 (1980); Rule 61, Utah Rules of Civil Procedure.

■ Defendants next allege that the trial judge erred by signing findings of fact and conclusions of law after granting plaintiffs' and cross-defendants' motions for directed verdict. Defendants suggest that the entering of findings and conclusions unfairly prejudices their case on appeal. In *Smith v. Thornton*, 23 Utah 2d 110, 458 P.2d 870 (1969), appellants argued that the trial judge erred by *not* entering findings and conclusions after having granted a motion for directed verdict in favor of the defendant. In that case we noted that:

> Rule 52(a) of the Utah Rules of Civil Procedure relating to findings of fact and conclusions of law states that such are unnecessary on decisions on motions under Rules 12 or 56, 'or any other motion except as provided in Rule 41(b).' A motion for a directed verdict falls specifically under Rule 50, not Rule 41(b), thus on such motion the trial court *need not* enter findings and conclusions in granting such a motion. [Emphasis added.]

23 Utah 2d at 114, 458 P.2d at 872. Defendants have cited a case similar to *Smith v. Thornton*, supra. In *O'Brien v. Westinghouse Electric Corp.*, (3rd Cir., 1960) 293 F.2d 1, appellants objected to findings and conclusions entered after a directed verdict was granted in favor of the defendant. The court ruled that no findings of fact were necessary. Neither the above mentioned case law nor our rules of procedure indicate that it is improper for a trial court to enter findings and conclusions if it wishes to do so. Findings or a memorandum decision are helpful to this Court when reviewing the direction of a verdict since it makes apparent the trial court's basis. The practice is encouraged.

■ Plaintiffs contend that they are entitled to additional damages as the result of the trial court's order requiring them to continue to make the full lease payments to the defendants. Rule 74 of the Utah Rules of Civil Procedure precludes us from considering this request since the plaintiffs failed to perfect a cross appeal by preparing and filing a statement of the points they intended to rely upon. Plaintiffs also request that they be awarded attorney's fees incurred in defending this appeal. Since the option contract specifically provides for such fees, the case must be remanded to the trial court for a further finding and award of a reasonable amount. See *Management Services Corp. v. Development Associates*, Utah, 617 P.2d 406 (1980).

The judgment of the trial court is affirmed and the case is remanded to fix and award reasonable attorney's fees incurred by plaintiffs on appeal. Costs to plaintiffs and cross-defendants.

HALL, C. J., STEWART and OAKS, JJ., and JAMES S. SAWAYA, District Judge, concur.