KELLEY v. SALT LAKE TRANSPORTATION CO., et al.

No. 6329.   Decided August 15, 1941.   (116 P. 2d 383.)

*Ingebretsen, Ray, Rawlins & Christensen,* of Salt Lake City, for appellant.

*E. LeRoy Shields,* of Salt Lake City, for respondents.

438

LARSON, Justice.

Plaintiff was a passenger in one of the defendants' cabs on February 10, 1940, seeking to be driven from the Medical Arts Building on East South Temple Street in Salt Lake City, to her home at 921 West Third North Street. Plaintiff and her minor child sat in the back seat. The driver proceeded west on South Temple Street. Plaintiff in her complaint claims the cab was being driven carelessly, at an excessive rate of speed, and that the driver failed to keep a proper lookout; that as the cab entered the intersection of South Temple and First West Streets in order to avoid a collision with another car going across the intersection, the defendant driver of the cab applied his brakes without warning and so suddenly that the plaintiff was thrown from the rear seat against the back of the front seat and into the bottom of the cab; that as a result she sustained injuries consisting of bruises and contusions of the arms and legs, a wrench of her back, severe pain and nervous shock; and that as a result she has suffered damages in the amount of $1,000 general damages, and $50 for doctors' and nursing fees.

The defendants' answer denied the negligence of the driver and alleged as an affirmative defense that shortly after February 10, 1940, plaintiff informed the defendants of the accident and of her injuries; that the defendants denied the claimed negligence of the driver but to discharge any possible claims that the plaintiff might have against the defendants, on February 21, 1940, they paid to the plaintiff the sum of $20 of which the plaintiff acknowledged receipt in writing, and in consideration thereof released and discharged the defendants from all claims, damages and right of action of every kind and character growing out of the incident of which complaint is made. In reply the plaintiff admits that she signed the release but alleges that her signature was procured by misrepresentation and fraud, consisting of statements made by defendants' agents that the defendants were not liable to her

in damages and that unless she signed the release they would not pay her doctor bills.

Later plaintiff returned the $20 to the defendants and stated in her letter to them that she would not be further bound by the provisions of any release she had signed. Plaintiff sued and the trial resulted in a verdict for plaintiff. Defendants appeal. The questions involved are the following:

1. Were the pleadings or evidence sufficient to avoid the effect of the release executed by plaintiff in favor of the defendants?

2. Is the evidence sufficient to justify or sustain a verdict in favor of the plaintiff and against the defendants on the question of negligence?

3. Did the trial court err in giving plaintiff's instruction No. 2, or in refusing to give defendants' requested instructions?

Were the pleadings or evidence sufficient to avoid the effect of the release executed by respondent in favor of the appellants? Respondent admits the execution and delivery of the release, but alleges that it was obtained by the misrepresentations of the appellants' agents, and denies that she is bound by its terms. The accident out of which this suit arose occurred on the 10th of February, 1940. On the 13th, respondent called appellant on the telephone and talked with Mr. Charles A. Boynton, appellants' agent, and he sent her to see Dr. Spencer Wright. On the 14th, Mr. Boynton had Dr. Wright call at the respondent's home. On the 15th or 16th respondent saw Dr. Byron Reese, a doctor of her own choosing; and on the 18th, Dr. Howard T. Anderson, likewise a doctor of respondent's choice. In response to a telephone call from respondent's home to the effect that she was still in bed, Mr. Boynton went to see her on the 14th or 15th. Respondent testified that he offered her $10 and payment of all doctors' bills in settlement, which she refused. Mr. Boynton testified that he merely discussed her injuries. In response to a telephone call made

by Mr. George Utley, a mature man, respondent's brother, Mr. Boynton returned to the respondent's home accompanied by another agent of the appellants, on the 21st, which was eleven days after the accident. Mr. Utley stated over the telephone that they were ready to talk a settlement. Respondent was still in bed. Mr. Boynton offered $20 to cover respondent's expenses in having to employ household help while in bed and payment of all past doctors' bills and any further treatments by Dr. Wright. Mr. Utley suggested that she accept the terms of the offered settlement, and it was so agreed. Mr. Boynton left and a third agent of the appellant company brought back the release, which plaintiff signed, and he left the $20 in currency. Respondent testified that she had told Mr. Boynton on the 21st that they had called an attorney and that Mr. Boynton said there was no need for an attorney and told her that the defendants were not liable under any circumstances.

If the release is a full settlement and satisfaction of the respondent's claim the trial court erred in refusing to grant appellants' motion for a directed verdict.

A release may be avoided if the releasor is at the time of its execution mentally incompetent and this incompetence may be caused by various things such as disease or physical injury, nervous shock, extreme mental pain, etc., or if the release is obtained by fraud and misrepresentation. But to so make a release void it must be clearly shown that the releasor did not possess at the time of the execution of the release sufficient understanding to know the nature and effect of the agreement, or to be able to carefully consider his or her rights, or that he or she signed the release under a misapprehension of the facts, which was induced by the false and fradulent representations of the party released, made for the purpose of deceiving the releasor and actually deceiving him or her as to the facts. It is the duty of a releasor, having the ability and understanding to familiarize himself or herself with the contents of the written release and to exercise prudence in signing it. As said in 53 C. J. 1219, § 36:

"A releasor, in order to avoid a release on the ground of fraud or misrepresentation, must show that he had a right to rely on the misrepresentation, and that he did in fact rely on it in executing the release. As otherwise stated, the rule is that the fraud must have induced or produced the execution of the release, or contributed to it as a cause * * * It has been held that the releasor has the right to rely upon the releasee's material statements of fact, but that he has no right to rely on the usual chaffering statements of the releasee on which a prudent man would not rely."

And as said by Justice Sharwood in *Pennsylvania R. Co.* v. *Shay*, 82 Pa. 198:

"It has been more than once held that it is error to submit a question of fraud to the jury upon slight parol evidence to overturn a written instrument. The evidence of fraud must be clear, precise and indubitable; otherwise it should be withdrawn from the jury."

In the absense of a confidential relationship, which does not exist in the present situation, a misrepresentation of law does not vitiate a release unless it is made recklessly or without belief of its truth. Where the releasor has consulted his attorney with respect to the matter, a misrepresentation of law, which is not a representation as to fact, will not make it possible to avoid the release.

The inadequacy of the consideration for the release may be so gross as to clearly indicate fraud, but here the consideration was not grossly inadequate, and is not indicative of any fraud or overreaching on the part of the appellant companies' agent. Respondent's medical expenses were to be paid and further treatments given if necessary in addition to the $20 in currency. Here the plaintiff had the opportunity of exercising her freedom of choice as between executing the release or relying on her legal rights and bringing suit. She chose to execute the release and it cannot be said that it was not voluntary on the respondent's part. She testified to the effect that she had consulted a lawyer and she admitted that she had discussed with her brother, Mr. Utley, the advisability of making a settlement. Negotiations for a settlement were com-

menced by her and since they occurred ten or eleven days after the accident, they were at a time when she was greatly recovered from the pain and attendant nervous shock caused by her taxi ride. There is no evidence of overreaching, of rushing the plaintiff, of undue arguing, or high pressure, or of any misrepresentation or deception, or taking any unfair advantage.

The case of *Kilby* v. *Charles City Western R. Co.*, 191 Iowa 926, 183 N. W. 371, 375, involved a railroad employee's injury. While in the hospital and recovering from an operation of two or three days previous, defendant's insurance adjuster came to see him and offered to settle. Plaintiff's parents were in the room with him. The agent said that by the time he completed a law suit, which would take at least three to five years, he would receive less money than the agent offered; that his claim was not covered by the federal act, and that all he could recover under the state act was $2,627.50, plus medical bills, which was the amount offered in settlement. Plaintiff had consulted his attorney previously and had been advised, and still agreed to accept the amount offered. The court held that the release was binding because there was no misrepresentation or fraud on the part of the adjuster as could be made the basis for setting aside the release. The court said:

"While it may be true that the appellant saw fit to accept the cash tendered him rather than take his chances on the outcome of litigation, it was a matter of choice and determination by him, and we do not find that there was sufficient evidence to go to the jury on the question of his having been unduly persuaded to make said settlement or that there was any fraud in procuring the same.

"The statements of the adjuster as to how long litigation might be protracted were evidently mere expressions of opinion and are not shown to have been fraudulently made. Such expressions cannot be made the basis of setting aside a release. * * *

"This is not a case where an adjuster for a company rushes to a recently injured party and hastily secures a settlement without giving the injured party opportunity for reflection or to obtain counsel A reading of the record in this case satisfies us that the appellant fully understood the nature of the business in hand. He understood

fully that the adjuster was representing the appellee and endeavoring to secure a settlement in its behalf. It was fully understood by the appellant whom Walters represented and what his purpose was; in other words, the parties were dealing at arm's length. The appellant was an adult of experience. He had employed an attorney and had been fully advised by his attorney of his legal rights and had instituted suit. He had been told by his attorney the prospects of the litigation and the amount that the attorney thought he could recover by suit and what he ought to accept in way of settlement. In anticipation of his conference with the adjuster respecting a settlement, he had sent for his relatives, had canvassed the situation with them, and had solicited their advice and counsel, and they were present when the settlement was made and took part in the discussion respecting the same. The amount of the settlement was not unsubstantial or trivial, and not such as to shock the conscience or be indicative of fraud. * * * Fraud and over-reaching have been repeatedly held by us to be sufficient to vitiate this kind of an instrument, but fraud it not to be presumed, and there must be evidence to sustain a charge of fraud before the question can be submitted to a jury. Upon the record in this case, we think it would have been error on the part of the trial court to have submitted to the jury the question of the mental incapacity of the appellant or of the alleged fraud and misrepresentations in securing the release. It was a valid and binding instrument, and it is conclusive upon the rights of the appellant to maintain this action."

In *Denver & R. G. R. Co.* v. *Sullivan,* 21 Colo. 302, 41 P. 501, 504, the plaintiff was injured while acting as brakeman. Defendant's agent represented to him that the company was not liable for the accident which resulted in damage to plaintiff's ankle. A settlement for $108 was made and defendant in the subsequent suit set up the signed release as a defense. The trial court found for the plaintiff and he received a verdict for $5,000. This judgment was reversed on appeal because the appellate court held that the release was valid and binding. The court held that the agent's statement of nonliability was not fraud.

"It was at most a statement of opinion as to the legal liability of the Union Pacific Railway Company, and there was nothing in the relation of Manchester [defendant's agent] towards him that would imply any undue influence, or that should induce him to accept what he may have said without question."

The court relied upon the quotation from the Pennsylvania court, given *supra*, and further said:

"The evidence relied on to show fraud in its procurement was clearly insufficient, and the court below erred in submitting that question to the jury."

In *Allgood* v. *Tarkio Electric & Water Co.*, 222 Mo. App. 964, 6 S. W. 2d 51, 55, plaintiff signed a release of all claims against the defendant, employer, due to a negligent injury. He received $450 in satisfaction of his claim. In his suit against the defendant he claimed the release was subject to rescission because obtained by the fraud of the defendant's agent, in that the agent told him that he could not recover in a suit, and that the $450 was all he could get under the law. The appellate court held that the trial court erred in submitting the question of fraud to the jury and in entering the judgment on the jury's verdict for $1,000. The release was fairly procured in that the plaintiff had been the first to inquire about a settlement, his family had discussed the matter with him, and it was made three months after plaintiff's injury. Plaintiff failed to read the release but this was not due to defendant's conduct. The court said:

"The general rule that misrepresentations as to a matter of law do not constitute actionable fraud is subject to two well-recognized exceptions, (1) where there is a relation of trust and confidence between the parties * * * and (2) where one party is possessed of superior knowledge and takes advantage of the other party's ignorance of the law to mislead him by studied concealment or by misrepresentation. * * *

"The statements made by defendant's attorney to plaintiff did not relate to any material fact in the case, but at most were mere expressions of his opinion as to defendant's liability to plaintiff for the injuries received by him while in defendant's employ.

"There was nothing in the conduct of defendant's attorney or in the statements made by him at and prior to the execution of the release indicating any fraud, imposition, misrepresentation, or undue influence on his part. He simply expressed his opinion that plaintiff could not recover anything from defendant on account of his injuries. Neither is there anything in the evidence to indicate that plaintiff was mentally

incapacitated in any way. Under such circumstances he had no right to rely on the mere opinion of his adversary's attorney." .

In *Valley* v. *Boston & M. R. Co.*, 103 Me. 106, 68 A. 635, plaintiff signed a release, receiving in settlement for his injuries $15 and payment of doctors' bills. He later sued the defendant and recovered a verdict of $1,416.66. In the trial court it was claimed that the release was secured through the misrepresentations by defendant's claim agent as to the defendant's liability. The court held that the agent in saying the defendant was not liable to the plaintiff, since he was not a regular passenger but was merely on the train supervising a shipment of potatoes, was merely expressing an opinion on a question of law and was not misrepresenting any matter of fact. There was nothing in the situation to justify the plaintiff in relying upon that opinion. He had sought the claim agent to make a settlement and knew the agent represented the defendant, whose interests in the matter would necessarily be adverse to those of plaintiff.

Since plaintiff's pleadings and evidence in the trial court did not avoid the effect of the release, the trial court erred in not instructing the jury to return a verdict in favor of the defendants and against the plaintiff. This makes it unnecessary to discuss the other questions raised on this appeal.

The judgment is reversed and the cause remanded with directions to enter a judgment for defendants, "No cause of action." Costs to appellants.

MOFFAT, C. J., and WOLFE, McDONOUGH, and PRATT, J.J., concur.