388 P.2d 409

Leone CAMPBELL, Plaintiff and Appellant,

v.

SAFEWAY STORES, INCORPORATED,
a corporation, Defendant and
Respondent.

No. 9802.

Supreme Court of Utah.

Jan. 17, 1964.

Henriod, C. J., dissented.

Shirley P. Jones, Jr., G. Kenneth Handley, Jr., Salt Lake City, for appellant.

Ray, Quinney & Nebeker, Marvin J. Bertoch, L. Ridd Larson, Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff, Mrs. Leone Campbell, sued for injuries suffered when she tripped and fell over a small cardboard box in an aisle of the defendant's supermarket located at 4th South and Ninth East in Salt Lake City.

A jury found a verdict in favor of the plaintiff for $14,053.26. Subsequently the trial court granted defendant's motion for judgment notwithstanding the verdict. Plaintiff appeals seeking (1) reversal of that ruling and reinstatement of the verdict, and (2) an additur to the verdict, or in the alternative, a new trial on the issues of damages only.

Plaintiff is a woman of about 60, stated to be "of advanced years," a characterization which is, of course, entirely dependent upon one's point of view. She had for some years been in ill health, suffering from Parkinson's Disease. At the time of the accident she was on some new medication which had greatly improved her condition, so that she was able to move about quite well. Her eyesight was also impaired: she had a fully developed cataract in the right eye, so that her vision was reduced to light perception only; a considerable degree of nearsightedness in the left eye, for which she normally used glasses. But at the time of this incident she was not wearing them.

Mrs. Campbell resided with her adult daughter, Jeanne. As was their custom, they went to the defendant's store to do their weekly shopping at about 8 p. m. on Friday evening, when it was not very busy. As they browsed along the aisles, selecting desired items, Jeanne pushed the grocery cart and plaintiff followed along. Just prior to this accident they proceeded eastward to the end of one aisle and turned left to go westward into the next one, with Jeanne and the cart slightly ahead of plaintiff, the latter searching the shelves for a particular brand of dog food. When they had proceeded but a few feet, plaintiff tripped over a small empty cardboard box in the aisle, precipitating her to the floor and causing what she characterized as "terrific pain." Jeanne assisted her in getting to the car. She continued to suffer extreme pain, and the next evening in arising from

her chair, she felt something "snap" in her hip. Upon being taken to the hospital, X-rays revealed that she had sustained a fracture of the neck of the femur. Omitting unnecessary detail, it is sufficient to say that although the plaintiff was obliged to undergo surgery several times, it proved impossible to get a good union of the bone. Because of the crippling of the hip joint, her locomotion is permanently impaired.

### Defendant's Negligence

■ It is hardly open to question that reasonable minds could believe that the leaving of such a box in the aisle, where people are expected to be preoccupied in searching the shelves for groceries, would create a hazard exposing others to an unreasonable risk of harm.[1] That danger to customers is reasonably to be apprehended from such a circumstance is shown by the defendant's store manager, Mr. Douglas Willey, who testified to the care he personally observed and urged upon his employees to keep the aisles free of boxes and merchandise in the interest of safety.

■■ A more crucial question is whether the evidence will justify a finding that the defendant's servants placed the box there. Defendant is warranted in insisting that this fact cannot be found from speculation and conjecture, but there must be a sound basis in the evidence from which it can reasonably be determined that there is a greater probability that the box was left there by an employee than otherwise.[2] Facts shown by the evidence which might be regarded as having a significant bearing on that question are these: that this was quite a small box; only six inches high, by one foot wide and a foot and a half long; that it was of a type which some of the canned goods come in which the clerks remove and place on the shelves; that it would be quite unusual for a customer to be using a cardboard box in the merchandise area; and even more so to be using one of this small size; that customers usually do not do so, but use shopping carts for gathering their purchases, then go through the checkstands; that the checkers place the items purchased in large sacks, or in some instances in boxes; if boxes are used for this purpose, they are usually larger than the box referred to. From these facts, and inferences that can be drawn from them, the jury could reasonably believe that there was a greater probability that store employees left the box where it was than that a customer or stranger did. This case is distinguishable from Lindsey v. Eccles Hotel.[3] There the plaintiff slipped on water spilled on the floor of a cafe. Both

1. See Hillyard v. Utah By-Products Co., 1 Utah 2d 143, 263 P.2d 287.

2. Alvarado v. Tucker, 2 Utah 2d 16, 268 P. 2d 986.

3. 3 Utah 2d 364, 284 P.2d 477.

employees and customers had access to the water, so it would have involved mere conjecture as to who spilled it.

The foregoing conclusion renders it unnecessary for us to be critically concerned with plaintiff's further argument that the issue of defendant's negligence was properly submitted because the checker at the end of the aisle had a clear view of the area in question for a sufficient interval of time that the checker could have seen the box and removed it. But due to the dispute between the parties about it, it appears likely that a jury question existed as to that matter also.

### Plaintiff's Contributory Negligence

■ We agree that ordinarily one is guilty of contributory negligence which will preclude recovery if she fails to see and give heed to a danger which is plain to be seen.[4] However, as we have held on a number of occasions, this rule is not strictly applicable where there are extenuating circumstances which impair the ability to see the hazard.[5] They were present in the instant case in that plaintiff's daughter was going just ahead of her with the grocery cart; and that plaintiff was preoccupied in searching the shelves for certain merchandise. There is the further fact that it would not be unreasonable for one to proceed with at least some degree of assurance that these aisles are clear of impedimenta. Under such circumstances, it is our opinion that a jury question existed as to whether the plaintiff was observing the standard of care of an ordinary, reasonable and prudent person for her own safety.

### Inadequacy of Damages

In support of her contention that the award of $14,053.26 is so small in comparison to her actual injury and damage that justice demands that this court order an additur,[6] or a new trial on the issue of damages, plaintiff points out that she has already incurred medical, hospital and related expenses of approximately $8,000, leaving only about $6,000 as general damages for pain and suffering and to take care of future expenses. In that connection, it should be remembered that the plaintiff had long been in ill health; that she was not shown to be gainfully employed, but lived with her daughter.

■■ Due to their advantaged position in close proximity to the trial, the parties and the witnesses; and their practical knowledge of the affairs of life as a background against which to weigh the evidence, the assessment of damages is something

4. Dalley v. Mid-Western Dairy, 80 Utah 331, 15 P.2d 309; Clark v. Union Pacific R. R., 70 Utah 29, 257 P. 1050.
5. See discussion in Federated Milk Producers v. Statewide Plumb. & Htg., 11 Utah 2d 295, 358 P.2d 348 and cases therein cited.
6. See Bodon v. Suhrmann, 8 Utah 2d 42, 327 P.2d 826.

peculiarly within the prerogative of the jury to determine, and the court is extremely reluctant to interfere with their judgment in that regard.[7] From the plaintiff's point of view, her insistence that the award is inadequate to her needs and desires is understandable. But we are obliged to look at the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the verdict. In doing so, we do not see it as so entirely beyond reason as to require that we upset it.[8]

■ Under our system it is contemplated that the right to trial by jury be assured. This is something more than a high-sounding phrase to be declaimed on patriotic occasions. It is the duty of courts to honor it in the observance. Whenever there is genuine dispute as to issues of fact upon which the parties' rights depend, they are entitled to have them submitted to and settled by a jury.[9] When the parties have had a full and fair opportunity to present their cause, and the jury has rendered its verdict, it should not be interfered with unless there appears some compelling reason why justice demands that it be done. We find none here. Accordingly, the verdict and the award of damages as found by the jury must stand. The order granting judgment notwithstanding the verdict is set aside. Costs to plaintiff (appellant).

McDONOUGH, CALLISTER, and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I dissent, disagreeing with the main opinion's assertion that the instant case is distinguishable from Lindsey v. Eccles Hotel. The main opinion says "There the plaintiff slipped on water spilled on the floor of a cafe. Both employees and customers had access to the water, so it would have involved mere conjecture as to who spilled it." Almost identical circumstances existed in the store, so it would have involved mere conjecture as to who placed the box on the floor.

In the Lindsey case we said the same thing as has the main opinion and yet we arrived at an opposite result, when we asserted that "there was no evidence as to how the water got onto the floor, by whom it was deposited, exactly when it arrived there or that the defendant had knowledge of its presence" so that "under such circumstances, a jury cannot be permitted to speculate that the defendant was negligent."

It is elementary that a plaintiff has the burden of showing negligence on the part of defendant, and the showing here was, in

7. Stamp v. Union Pacific R. R., 5 Utah 2d 397, 303 P.2d 279.
8. Schneider v. Suhrmann, 8 Utah 2d 35, 327 P.2d 822.

9. See statement in Stickle v. Union P. R. R., 122 Utah 477, 251 P.2d 867.

my opinion, less impressive than in the Lindsey case. It is also elementary that a defendant knew of the hazard or reasonably should have known of it, and the opinion's recitation of the facts that here was a little box of the type used in grocery stores usually not used by customers does not show a jury question, and it is far from proving negligence.[1]

It seems to me that under the facts adduced that proved nothing in the way of compensable negligence, makes the store owner an absolute insurer, far beyond any theory of liability based on a business invitee theory.

---

1. See also Hampton v. Rowley, 10 Utah 2d 169, 350 P.2d 151 (1960); Safeway Stores v. Ciner (Okl.), 380 P.2d 712 (1963).