PACKAGING CORPORATION OF
AMERICA, Plaintiff and
Respondent,

v.

William W. MORRIS, Defendant
and Appellant.

No. 14517.

Supreme Court of Utah.

March 4, 1977.

Paul T. Moxley, of Johnson & Spackman, Salt Lake City, for defendant and appellant.

Lauren N. Beasley of Cotro-Manes, Warr, Fankhauser & Beasley, Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

This action was commenced in the District Court in and for Salt Lake County by Plaintiff Packaging Corporation of America, an Illinois corporation authorized to do business in Utah, against Defendant William E. Morris, a Nevada resident. The case was tried without a jury and the trial court awarded judgment in favor of the plaintiff in the sum of $20,000, attorney's fee of $2,000, and court costs of $28. Defendant seeks reversal of the trial court's judgment.

Plaintiff operates two plants in Draper, Salt Lake County, Utah and has for many years supplied packaging materials to its customers including the supplying of cookie cartons to Bakker's Royal Dutch Cookies

Co., the assets of which were purchased by Hawkeye Investment Co. (herein "Hawkeye"), a Nevada corporation authorized to do business in Utah during all times mentioned herein. The assets of Bakker's were purchased by Hawkeye in early 1971 in Utah through a court-appointed receiver.

Hawkeye was a new business and experiencing cash flow difficulties; it was not extended credit initially by plaintiff but rather required to pay for all purchases C.O.D. However, in early 1971, defendant, a major stockholder of Hawkeye, and a William Birkinshaw, who served as president of Hawkeye (though the evidence is ambiguous about *when* he served in this capacity) agreed with plaintiff that credit would be extended by plaintiff to Hawkeye if defendant and Birkinshaw would individually sign a guaranty in the sum of $10,000 and be jointly and severally liable thereon. This was done and credit was then extended. Approximately one year after execution of the first guaranty, a second one in the sum of $20,000 was prepared by plaintiff and sent to defendant in Las Vegas, Nevada, who signed it. This second guaranty was given or mailed to defendant's agent and returned to plaintiff in Draper by said agent. It is the subject matter of this suit. The reason for executing this second guaranty was to extend the guaranty from $10,000 to $20,000 in order to accommodate an extension of credit to Hawkeye by plaintiff.

Defendant visited Utah in 1971 and 1972 on approximately four occasions and phoned into Utah about once a week during 1971 and into 1972 concerning Hawkeye's business. The discussions between defendant and plaintiff's employees were in Draper on the first guaranty, though the second guaranty, as indicated, was executed by defendant in Las Vegas after telephone discussions between him and plaintiff's area credit manager (neither of whom was in Utah during *these* discussions). Defendant admitted at trial that he had substantial money invested in Hawkeye, that a Milt Gordon was his agent in Utah during the times mentioned above concerning the cookie business of Hawkeye, and that the weekly phone calls were made by him to "determine to the best of my ability how Mr. Gordon and Mr. Birkinshaw were running the company".

Defendant claims that the $20,000 guaranty was signed by him conditionally and therefore not enforceable against him as the condition for his signing it was that Birkinshaw (who signed the $10,000 guaranty) should have also signed it. Birkinshaw's name was typed on this guaranty but he never executed it. However, defendant clearly admitted at trial that he never communicated this condition to any officer, agent, or employee of the plaintiff. The guarantor is liable to the creditor unless the creditor had actual or constructive knowledge of a condition imposed by the guarantor which was not fulfilled.[1] In this matter, the finding by the trial judge of the failure by defendant to communicate to plaintiff a condition to his signing the guaranty in question is sustained by the evidence.

Defendant also claims that failure of consideration for the $20,000 guaranty as well as its ambiguous contents should defeat plaintiff's claim. Again, the evidence justifies our sustaining the trial court's conclusion on these matters.

The concluding but significant issue in this case is whether defendant, not a citizen or resident of this state, submitted himself to the jurisdiction of the courts of this state concerning plaintiff's claim which arose, plaintiff contends, from the transacting of business by defendant in Utah.

The Utah Long Arm Statute[2] recites the following sections relevant to this case:

It is declared, as a matter of legislative determination, that the public interest

1. 38 Am.Jur.2d Guaranty, Sec. 50; *State Bank of Utah v. Burton Gardner Co., et al.*, 14 Utah 420, 48 P. 402 (1897).

2. Chapter 27, Title 78, Utah Code Annotated (1975 Supplement).

demands the state provide its citizens with an effective means of redress against nonresident persons, who through certain significant minimal contacts with this state, incur obligations to citizens entitled to the state's protection. This legislative action is deemed necessary because of technological progress which has substantially increased the flow of commerce between the several states resulting in increased interaction between persons of this state and persons of other states.

The provisions of this act, to ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution. [Sec. 22]

Any person, notwithstanding section 16–10–102 whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

(1) The transaction of any business within this state, . . . [Sec. 24]

■ Certainly, the record in this matter is filled with evidence of the defendant's deep and abiding interest in the affairs and success of Hawkeye in order to protect his investment of substantial money therein. Defendant, however, contends that the acts he performed concerning his business interests at Hawkeye are disparate from those acts in reference to the guaranty. Indeed, the former are numerous and the latter, scanty. And unless all of these acts are coterminous, then there is jurisdictional infirmity and defendant consequently should prevail on appeal. This point must be analyzed.

By uncontradicted testimony, the reason for the subject guaranty was to enlarge the line of credit already extended to Hawkeye. Both guaranties were the means by which credit could be extended by plaintiff, and defendant, hopefully, could benefit by protecting his investment of substantial money in Hawkeye. Although the cookie business did not succeed, a vital factor in the whole process of attempting to establish its success was the securing of the guaranties by plaintiff from defendant. Therefore to sever the acts made by defendant with respect to the business of Hawkeye from the acts relative to guaranties would be illogical. Defendant cannot contribute significantly to creating the vehicle which animated the cookie business—or attempted at least to do so—and then rebuke the treating of all acts relating to both matters *together*. We hold therefore that all acts concerning these two matters should be considered in a common relationship.

■ It must then be determined whether the contacts and acts of defendant relative to the business of Hawkeye, including the guaranties, constitute a transaction of business within Utah sufficiently to subject the defendant to the jurisdiction of the courts of this state. We hold that these acts and contacts are sufficient.

This court has considered the long-arm statute many times[3] and the United States Supreme Court has also addressed this issue in some famous cases.[4]

In *Union Ski*, supra, this court stated that the meaning of our long-arm statute

**3.** In the following cases, long-arm jurisdiction was upheld by this court: *Hill v. Zale Corporation*, 25 Utah 2d 357, 482 P.2d 332 (1971); *Foreign Study League v. Holland America Line*, 27 Utah 2d 442, 443, 497 P.2d 244 (1972). And in the following cases, jurisdiction was denied: *Hydroswift Corp. v. Louie's Boats and Motors, Inc.*, 27 Utah 2d 233, 494 P.2d 532 (1972); *Mack Financial Corp. v. Nevada Motor Rentals*, Utah, 529 P.2d 429 (1974); *Cate Rental Company v. Whalen Company*, Utah, 549 P.2d 707 (1976); *Chevron Chemical Company v. Mech-*

am, Utah, 550 P.2d 182 (1976); *Union Ski Company v. Union Plastics Corporation*, Utah, 548 P.2d 1257 (1976).

**4.** *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

. . . requires that the defendant has engaged in some substantial activity with some degree of continuity within this State. . . .

and it speaks of examples of activity to be examined in determining jurisdiction which are listed in *Hill*, supra. We believe that some of the examples or factors relevant to jurisdiction in *Hill* are present in this case; some are not. As to the latter, the evidence does not disclose that defendant had a telephone listing or did advertising in his name and, of course, the offices and plants of Hawkeye were not in defendant's name. But, defendant's agent was in Utah and performed continuous duties in Utah in overseeing the business of Hawkeye and hence defendant's interests therein for most of 1971 and into 1972. The agent's duties and contacts were not sporadic and transitory. Certainly Hawkeye had local offices and property in Utah and the activities of the defendant's agent at those offices constituted a substantial business presence in this state. And we have already held in this opinion that the asserted claim with respect to the guaranties became a commingled part of the activities of the cookie business, which activities obviously occurred in Utah.

The Utah cases heretofore cited by defendant, in support of his contention that the defendant cannot be held to the jurisdiction of Utah courts, are distinguishable from this case. And the primary point on which we distinguish is the substantial business presence of the defendant on a continuous and extended basis in Utah through and by virtue of his agent.

Affirmed. Costs to respondent.

ELLETT, C. J., and CROCKETT and MAUGHAN, JJ., concur.

HALL, J., does not participate herein.